IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOSEPH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-3092 |
| | ) | |
| VIPIN SHAH, et al., | ) | |
| | ) | |
| Defendant, | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff pursues claims against Defendant Dr. Shah for Dr. Shah's alleged failure to effectively treat Plaintiff's abdominal pain and gastrointestinal problems from about May 2010 to March 2011, when Dr. Shah last treated Plaintiff.

The Court denied Dr. Shah's second summary judgment motion, concluding that "[w]hile a juror could certainly find in Dr. Shah's favor on this record, the Court cannot rule out an inference of deliberate indifference to Plaintiff's continued complaints of abdominal pain and difficulty digesting food. A rational juror could find that Dr. Shah deliberately refused to rule out other causes of

Plaintiff's medical problems even though Dr. Shah knew his treatment approach had not improved Plaintiff's symptoms." (d/e 74, p. 2.) In particular, the Court was concerned with Plaintiff's persistently elevated levels of amylase, which can indicate pancreatitis. Id. at 8. Dr. Shah had concluded that the elevated amylase level was attributable to Plaintiff's H. Pylori infection, a condition which Dr. Shah diagnosed and treated. The Court assumes familiarity with that opinion.

After the Court recruited pro bono counsel for the trial, the Court granted Dr. Shah leave to file a third summary judgment motion, the motion now before the Court.

Plaintiff does not dispute Dr. Shah's additional evidence that Plaintiff's pancreatic amylase levels were actually normal. According to medical records attached to the third motion for summary judgment, Dr. Thomas Baker, a prison doctor at Western Illinois Correctional Center during the relevant time, ordered a "fractionated amylase" and an abdominal ultrasound of Plaintiff's pancreas and gall bladder in December of 2012, though Dr. Baker noted in the record that "neither [pancreatitis or choleocystitis] fit the clinical picture well." (d/e 109-1, p. 2.) Choleocystitis is an

inflammation of the gall bladder.  www.mayoclinic.org (last visited 7/1/2015).

The labs ordered by Dr. Baker showed that Plaintiff's elevated overall amylase level was attributable to a high salivary amylase level, not an elevated pancreatic amylase level.  (1/10/2013 medical record, d/e 109-1.)  The ultrasound of Plaintiff's pancreas and gall bladder were also normal, except that Plaintiff's liver "reported with patchy . .. [illegible] echogenicity, likely fatty infiltration, but radiologist wrote that infectious and neoplastic processes need to be excluded and recommended pre and post contrast CT abdomen." (1/10/13 medical record, d/e 109-1, p. 2.)  Dr. Baker referred Plaintiff for a CT scan, though Dr. Baker noted that the suspicion for infection or neoplasm was low.  Dr. Baker advised Plaintiff to avoid the food that caused Plaintiff gastrointestinal trouble.  Id.  Dr. Baker's physical exam of Plaintiff was unremarkable, including an exam of Plaintiff's salivary gland. Dr. Baker concluded that Plaintiff's elevated salivary amylase was asymptomatic.  Id.   The results of the CT scan, if one was done, are not in the record, and Dr. Baker is not a defendant.

This additional evidence addresses the Court's concern that Dr. Shah had failed to rule out pancreatitis. The evidence also shows that another doctor, Dr. Baker, agreed with Dr. Shah that Plaintiff's clinical presentation did not fit the picture for pancreatitis.

Plaintiff does not dispute the lab results, but he "denies that one test is determinative of Plaintiff's claims." (Pl.'s Resp. p. 2.) He offers a list of conditions which may cause elevated blood amylase levels. (Pl.'s proposed additional fact 41.) He contends that the H. Pylori "only masked and or demonstrated Smith's pancreatic infection." (Pl.'s Resp. p. 16, d/e 122.) However, he offers no evidence that Plaintiff actually had a pancreatic infection at any time. Plaintiff complained of the same symptoms to Dr. Baker that Plaintiff had complained of to Dr. Shah, and the tests ordered by Dr. Baker showed a normal pancreas and normal pancreas amylase level.

Plaintiff contends that he still needs unspecified treatment for his problems, but Dr. Shah is the only defendant in this case, and Dr. Shah has not treated Plaintiff for four years. If Plaintiff's

current doctors are being deliberately indifferent, Plaintiff may file a new lawsuit after exhausting his administrative grievances.

The Court has a duty to ensure that material factual disputes exist for the jury to decide. *See* Watts v. Network Solutions, Inc., 1999 WL 778389 *4 (S.D. Ind. 1999)("If there are no genuine issues of material fact, a jury trial is a waste of time for the jurors, the court, and the parties.")(unpublished). Additionally, summary judgment is not a discretionary remedy. Dr. Shah is entitled to summary judgment if no rational juror could find in Plaintiff's favor. Fed. R. Civ. P. 56(a)("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")

In the Court's opinion, the additional evidence removes any doubt about deliberate indifference. Dr. Shah's second summary judgment motion should arguably have been granted to begin with, but the Court was concerned about Plaintiff's elevated amylase level. The Court is obviously not a doctor, but the Court will not ignore obvious possible diagnoses described in reputable sources, particular in a pro se prisoner case where the plaintiff does not have access to that information or access to other doctors for a

second opinion. The website for the U.S. National Library of Medicine indicates that elevated blood amylase levels may be caused by serious conditions including pancreatitis and gall bladder disease. www.nlm.nih.gov/medlineplus/ency ("Amylase—blood"). The Court was concerned that Dr. Shah had not ordered further tests in light of Plaintiff's amylase level, which continued to be high even after Plaintiff's treatment for H. Pylori.

However, the additional evidence shows that Dr. Baker did order further tests about nine months after Dr. Shah last treated Plaintiff. These tests show that Plaintiff's elevated amylase level was attributable to his salivary gland, that his pancreatic amylase level was normal, and that his pancreas and gall bladder were normal on ultrasound examination. Dr. Baker's notes state that Plaintiff had no nodules, lumps, or enlargement of his salivary gland and that the elevated salivary amylase was asymptomatic. Therefore, even if Dr. Shah should have ordered these tests earlier to rule out pancreatitis and gall bladder disease, Plaintiff suffered no harm from Dr. Shah's failure to do so because the test results were negative. The tests did not alter the treatment of Plaintiff's symptoms. Walker v. Peters, 233 F.3d 494, 502 (7th Cir.

2000)(summary judgment appropriate where plaintiff had no competent evidence that he was harmed by delays or refusals to provide Factor VIII for hemophilia).

That Plaintiff is still experiencing intestinal problems does not mean that Dr. Shah was deliberately indifferent. Dr. Shah treated Plaintiff for less than one year and has not treated Plaintiff for over four years. During the year that Dr. Shah was responsible for Plaintiff's care, Dr. Shah ordered lab tests, including a soy allergy test, a thyroid test, cholesterol tests, and a test for lipase levels. He treated Plaintiff's H. pylori infection and also prescribed Prilosec, Bioxin, Pepto Bismol, and Flagyl. (Dr. Shah Aff. para. 9.) No rational juror could find that Dr. Shah's approach was outside the acceptable standard of care, much less substantially so. Duckworth v. Ahmad, 532 F.3d 675, 681 (7th Cir. 2008)(no deliberate indifference where doctor "tried to cure what he thought was wrong . . ., an opinion he arrived at using medical judgment.")

Plaintiff moves for the appointment of an expert under Federal Rule of Evidence 706 to help him prove his case. Rule 706 permits a court to appoint a neutral expert to assist the trier of fact, not to prove a party's case. See Turner v. Cox, 569 Fed.Appx. 463, 468

(7th Cir. 2014)("A court may appoint an expert to help sort through conflicting evidence, . . ., but it need not appoint an expert for a party's own benefit . . ."). Further, even if Plaintiff had evidence that another doctor would have had a different approach, that would not be enough to show deliberate indifference on this record. Norfleet v. Webster, 439 F.3d 392, 396, 396 (7th Cir. 2006)("[A] difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference"). Estate of Cole v. Fromm, 94 F.3d 254, 261 (7th Cir.1996) ("Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference.").

In sum, a jury verdict for Plaintiff would not be supported by the evidence in the record because no evidence supports a finding that Dr. Shah was deliberately indifferent. Therefore, summary judgment must be granted to Dr. Shah.

IT IS THEREFORE ORDERED:

1. Plaintiff's motion for the appointment of an expert is denied (d/e 123).
2. Defendant's supplemental motion for summary judgment is granted (d/e 109). The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. This case is closed, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.
3. Attorney Costello is discharged as Plaintiff's pro bono counsel, with the Court's gratitude. Plaintiff proceeds pro se from the entry of this order.
4. If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.

5. **The clerk is directed to terminate Attorney Costello and to close this case.**

ENTER: 07/07/2015

FOR THE COURT:

s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
